**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEVE SETTLES, and DAWG INVESTMENT FUND LLC, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| DAKTRONICS INC., REECE A. KURTENBACH, and SHEILA M. ANDERSON, | |
| Defendants. | |

Plaintiffs Steve Settles and Dawg Investment Fund, LLC ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon, among other things, their counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Daktronics, Inc. ("Daktronics" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Daktronics; and (c) review of other publicly available information concerning Daktronics.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Daktronics securities between March 10, 2022 and December 6, 2022 inclusive (the "Class Period"). Plaintiffs pursue claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Daktronics designs and manufactures electronic scoreboards, programmable display systems, and large screen video displays for sporting, commercial, and transportation applications.

3.      On August 31, 2022, Daktronics issued a press release announcing its first quarter 2023 results. Therein, the company reported that it experienced "multiple material supply chain disruptions, labor shortages, and a shutdown of our facilities in Shanghai, China for a significant portion of the quarter." The Company also reported that gross profit as a percentage of net sales was 15%, which was lower compared to 22% a year earlier. Operating expenses were $31.3 million, compared to $26.5 million a year earlier. And operating margin for the first quarter of fiscal 2023 was negative 3.2%, compared to positive 3.9% for the first quarter of fiscal 2022.

4.      On this news, Daktronics' share price fell $0.91, or 22.1% to close at $3.20 per share on August 31, 2022, thereby injuring investors.

5.      On December 6, 2022, after the market closed, Daktronics filed a Form 12b-25 with the SEC stating that it would be unable to timely file its Quarterly Report on Form 10-Q for the period ended October 29, 2022, and that there is "substantial doubt" about the Company's ability to continue as a going concern. Daktronics also disclosed that it recorded a valuation allowance of approximately $13.0 million for deferred tax assets, which "created a covenant violation under our line of credit agreement." As a result, the Company "also expects to conclude that its disclosure controls and procedures and internal control over financial reporting were not effective as a result of material weaknesses."

6.      On this news, Daktronics' share price fell $1.30, or 39.2%, to close at $2.02 per share on December 7, 2022, thereby injuring investors.

7.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company was experiencing challenges that increased costs, including supply chain disruptions, that impacted Daktronics' ability to fund inventory levels and operations; (2) that, as a result, it was probable that some portion of the Company's deferred tax assets would not be realized; (3) that as a result, Daktronics was reasonably likely to record a material valuation allowance to its deferred tax assets; (4) that there were material weaknesses in the Company's internal controls over financial reporting related to income taxes; (5) that the foregoing presented liquidity concerns and there was substantial doubt as to the Company's ability to continue as a going concern; (6) and that as a result of the foregoing, Defendant's positive statements about the

Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.     Plaintiffs Steve Settles and Dawg Investment Fund, LLC, as set forth in the accompanying certification, incorporated by reference herein, purchased Daktronics securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant Daktronics is incorporated under the laws of South Dakota with its principal executive offices located in Brookings, South Dakota. Daktronics' common stock trades on the NASDAQ Stock Market under the symbol "DAKT."

14.     Defendant Reece A. Kurtenbach ("Kurtenbach") was the Company's President and Chief Executive Officer ("CEO") at all relevant times.

15.     Defendant Sheila M. Anderson ("Anderson") was the Company's Chief Financial Officer ("CFO") at all relevant times.

16.     Defendants Kurtenbach and Anderson (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.   The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Daktronics designs and manufactures electronic scoreboards, programmable display systems, and large screen video displays for sporting, commercial, and transportation applications.

**Materially False and Misleading**

**Statements Issued During the Class Period**

18.     The Class Period begins on March 10, 2022.[1] On that day, the Company issued a press release announcing third quarter fiscal 2022 financial results. It contained the following financial highlights:

> Net sales of $139.6 million as a result of record orders and eased pandemic related site restrictions

> Operating loss of $5.7 million realized due to inflation in materials and freight costs, increased personnel spend, and a warranty charge

> Record level of orders of $214.8 million

> Product order backlog of $353 million, driven by record order volume and muted conversion to sales due to supply chain challenges

19.     On June 8, 2022, the Company issued a press release announcing its fiscal year and fourth quarter 2022 results. It contained the following financial highlights:

> Fiscal net sales of $611.0 million as a result of record orders and eased pandemic related site restrictions

> Operating income of $4.0 million realized through headwinds of inflation in materials, personnel and freight related expenses

> Product order backlog of $472 million, driven by record order volume of $846.1 million and softer conversion to sales due to supply chain challenges

(Footnotes omitted.)

20.     On June 16, 2022, the Company filed its Form 10-K with the SEC for the year ended April 30, 2022 (the "2022 10-K"), signed by defendants Kurtenbach and Anderson. It stated that "as of April 30, 2022, our disclosure controls and procedures were effective."

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

21.     The 2022 10-K also stated that, as of April 30, 2022, the Company had total deferred tax assets of $19.763 million, a valuation allowance to deferred tax assets of $2.452 million, and the net deferred tax assets was $17.311 million.

22.     The above statements identified in ¶¶ 18-21 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company was experiencing challenges that increased costs, including supply chain disruptions, that impacted Daktronics' ability to fund inventory levels and operations; (2) that, as a result, it was probable that some portion of the Company's deferred tax assets would not be realized; (3) that as a result, Daktronics was reasonably likely to record a material valuation allowance to its deferred tax assets; (4) that there were material weaknesses in the Company's internal controls over financial reporting related to income taxes; (5) that the foregoing presented liquidity concerns and there was substantial doubt as to the Company's ability to continue as a going concern; (6) and that as a result of the foregoing, Defendant's positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

23.     On August 31, 2022, the Company issued a press release announcing its first quarter 2023 results. It stated, in relevant part:

> Net sales for the first quarter of fiscal 2023 increased by 18.8 percent as compared to the first quarter of fiscal 2022. ***Sales growth was driven by the increased conversion of backlog to sales even while we experienced multiple material supply chain disruptions, labor shortages, and a shutdown of our facilities in Shanghai, China for a significant portion of the quarter.*** Supply chain disruptions like these are creating an increase in lead times by extending the timing of converting orders to sales. This coupled with strong demand has contributed to a larger than typical backlog.
>
> ***Gross profit as a percentage of net sales was 15.0 percent for the first quarter of fiscal 2023 as compared to 22.2 percent a year earlier. This comparative decline***

*in gross profit percentage was impacted by inflationary challenges in materials, freight, and personnel related costs. In addition, extraordinary supply chain disruptions, including the Shanghai factory closure, created intermittent work stoppages and factory inefficiencies, adding additional costs to meet customer commitments.*

*Operating expenses for the first quarter of fiscal 2023 were $31.3 million compared to $26.5 million for the first quarter of fiscal 2022 or an increase of 18.0 percent.* The increases were primarily personnel related expenses, convention and travel related expenses, and approximately $1.0 million for professional fees related to shareholder engagement.

Operating margin for the first quarter of fiscal 2023 was a *negative 3.2 percent,* compared to a positive 3.9 percent for the first quarter of fiscal 2022.

24.    On this news, Daktronics' share price fell $0.91, or 22.1%, to close at $3.20 per share on August 31, 2022, thereby injuring investors.

25.    On September 2, 2022, the Company filed its Form 10-Q with the SEC for the quarter ended July 30, 2022 (the "1Q23 10-Q"). The 1Q23 10-Q stated that the that there were no changes to the Company's internal control over financial reporting and affirmed that "as of July 30, 2022, our disclosure controls and procedures were effective."

26.    The 1Q23 10-Q stated that Daktronics expect to be in compliance with covenants for its credit agreement:

The credit agreement and amendments require us to be in compliance with certain financial ratios, including a covenant to maintain the ratio of interest-bearing debt to earnings before income taxes, depreciation, and amortization of less than 6.0 for the quarter ending October 29, 2022 and beginning with the fiscal quarter ending January 28, 2023 to be less than 2.5. A minimum fixed charge coverage ratio must be met of at least 2 to 1 at the end of any quarter during fiscal year 2023 and a ratio of at least 1.25 to 1 for the year end of fiscal 2023. As of July 30, 2022, we were not in compliance with these covenants, and our bank provided waivers for the first quarter of fiscal 2023 for such covenants. *Based on future projections, we expect to be in compliance with these covenants through the next year; however, with the uncertainty and volatility in the supply chain and the sensitivity of the covenants, we cannot be certain. If we violate a covenant and cannot obtain a waiver from the bank, we may need to seek additional debt or equity financing.*

7

27.     The above statements identified in ¶¶ 23, 25-26 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company was experiencing challenges that increased costs, including supply chain disruptions, that impacted Daktronics' ability to fund inventory levels and operations; (2) that, as a result, it was probable that some portion of the Company's deferred tax assets would not be realized; (3) that as a result, Daktronics was reasonably likely to record a material valuation allowance to its deferred tax assets; (4) that there were material weaknesses in the Company's internal controls over financial reporting related to income taxes; (5) that the foregoing presented liquidity concerns and there was substantial doubt as to the Company's ability to continue as a going concern; (6) and that as a result of the foregoing, Defendant's positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

28.     On December 6, 2022, after the market closed, the Company filed a Form 12b-25 with the SEC (the "Form 12b-25"), stating that it would be unable to timely file its Quarterly Report on Form 10-Q for the period ended October 29, 2022. The Form 12b-25 cited liquidity concerns caused by uncertainty in the Company's ability to generate sufficient cash flow amid ongoing supply chain disruptions, among other things. The filing stated, in relevant part:

> Daktronics, Inc. (the "Company," "we," "us" or "our") is unable to timely file its Quarterly Report on Form 10-Q for the period ended October 29, 2022 (the "Form 10-Q") on or before the prescribed due date of December 8, 2022 without unreasonable effort or expense to the Company. ***Ongoing supply chain disruptions and inflationary challenges in materials, freight and personnel related costs have and will continue to cause volatility in our cash flow, pricing, order volumes, lead-times, competitiveness, revenue cycles, and production costs. Our ability to fund inventory levels, operations and capital expenditures in the future will be dependent on our ability to generate cash flow from***

***operations in these conditions, to maintain or improve margins, to use funds from our credit facility, and to find other sources of liquidity.***

Although supply chain disruptions have started to ease, and we expect our inventory levels to decline, we cannot be certain we will not experience future disruptions or need additional liquidity to fund inventory levels, operations, and capital expenditures. We will need additional liquidity to meet our obligations as they come due in the 12 months following the date of this Form 12b-25, and we cannot be assured that such liquidity will be available or the form of such liquidity, such as equity raises or debt financing. ***These conditions raise substantial doubt about our ability to continue as a going concern.***

29.     The Form 12b-25 revealed that the Company recorded a $13 million valuation

allowance to deferred tax assets resulting from ongoing cost and liquidity challenges. It stated:

In response to these conditions, we are pursuing additional liquidity through various means, including but not limited to obtaining financing secured by a mortgage on our facilities, a sales-leaseback transaction, leasing property and equipment, and continued focus on reducing working capital. Since these plans are not finalized and are subject to market conditions that are not within our control, they cannot be deemed probable. As a result, we have concluded that our plans do not alleviate substantial doubt about our ability to continue as a going concern. In addition***, we recorded a valuation allowance of approximately $13.0 million for deferred tax assets under these conditions***. ***The recording of the deferred tax valuation allowance created a covenant violation under our line of credit agreement.*** We are in the process of obtaining a waiver for such violation, however, no assurances can be given it is forthcoming.

30.     The Form 12b-25 also stated that the Company expects to report that material

weaknesses in its internal control over financial reporting related to income taxes:

***In light of the substantial doubt in our ability to continue as a going concern and our related evaluation of the income tax implications of reaching this conclusion, the Company also expects to conclude that its disclosure controls and procedures and internal control over financial reporting were not effective as a result of material weaknesses.*** Our going concern policy did not contemplate evaluating the income tax implications of reaching a substantial doubt going concern conclusion. In addition, the material weaknesses relate to the untimely internal communication to support the functioning of internal controls and the resulting accounting for income taxes. The Company continues to evaluate its disclosure controls and procedures and internal controls over financial reporting, and its ultimate conclusions on these topics may differ from what the Company currently anticipates.

For these reasons, the Company needs additional time to complete its financial statements and other disclosures in the Form 10-Q. In accordance with Rule 12b-25 promulgated under the Securities Exchange Act of 1934, as amended, the Company intends to file its Form 10-Q on or before December 13, 2022.

31.     On this news, Daktronics' share price fell $1.30, or 39.2%, to close at $2.02 per share on December 7, 2022, thereby injuring investors.

**Post-Class Period Events**

32.     On December 13, 2022, the Company filed a Form 8-K with the SEC detailing an amendment to a credit agreement effective as of December 9, 2022.  Among other things, the amendment excludes from the covenant calculations the impact of the income tax expense related to establishing a valuation allowance for the Company's net deferred tax assets and adds additional financial reporting requirements and covenants.

**CLASS ACTION ALLEGATIONS**

33.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Daktronics securities between March 10, 2022 and December 6, 2022, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Daktronics' shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least hundreds or thousands of members in the proposed Class.  Millions of Daktronics shares were

traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Daktronics or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

37.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

        (a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

        (b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Daktronics; and

        (c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

39.     The market for Daktronics' securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Daktronics' securities traded at artificially inflated prices during the Class Period.  Plaintiffs and other members of the Class purchased or otherwise acquired Daktronics' securities relying upon the integrity of the market price of the Company's securities and market information relating to Daktronics, and have been damaged thereby.

40.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Daktronics' securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Daktronics' business, operations, and prospects as alleged herein.

41.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Daktronics' financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period

resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

42.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiffs and the Class.

43.     During the Class Period, Plaintiffs and the Class purchased Daktronics' securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

44.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Daktronics, their control over, and/or receipt and/or modification of Daktronics' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Daktronics, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

## (FRAUD-ON-THE-MARKET DOCTRINE)

45.     The market for Daktronics' securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Daktronics' securities traded at artificially inflated prices during the Class Period. On August 18, 2022, the Company's share price closed at a Class Period high of $4.29 per share. Plaintiffs and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Daktronics' securities and market information relating to Daktronics, and have been damaged thereby.

46.     During the Class Period, the artificial inflation of Daktronics' shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiffs and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Daktronics' business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Daktronics and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

47.     At all relevant times, the market for Daktronics' securities was an efficient market for the following reasons, among others:

(a)     Daktronics shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Daktronics filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Daktronics regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Daktronics was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

48.    As a result of the foregoing, the market for Daktronics' securities promptly digested current information regarding Daktronics from all publicly available sources and reflected such information in Daktronics' share price. Under these circumstances, all purchasers of Daktronics' securities during the Class Period suffered similar injury through their purchase of Daktronics' securities at artificially inflated prices and a presumption of reliance applies.

49.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the

sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

50.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Daktronics who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

51.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

52.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs and other members of the Class to purchase Daktronics' securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

53.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Daktronics' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Daktronics' financial well-being and prospects, as specified herein.

55.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Daktronics' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Daktronics and its business

operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Daktronics' financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations,

financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Daktronics' securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiffs and the other members of the Class acquired Daktronics' securities during the Class Period at artificially high prices and were damaged thereby.

59.     At the time of said misrepresentations and/or omissions, Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding the problems that Daktronics was experiencing, which were not disclosed by Defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired their Daktronics securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

62.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

63.     Individual Defendants acted as controlling persons of Daktronics within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.     As set forth above, Daktronics and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: December 21, 2022

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Gregory B. Linkh*
Gregory B. Linkh
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
      clinehan@glancylaw.com
      prajesh@glancylaw.com

*Counsel for Plaintiffs Steve Settles and Dawg Investment Fund, LLC*

## SWORN CERTIFICATION OF PLAINTIFF
## DAKTRONICS, INC. (DAKT) SECURITIES LITIGATION

I, Steve Settles, on behalf of myself and as Manager of Dawg Investment Fund, LLC, certify that:

1.  I have reviewed the Complaint, adopt its allegations, and authorize its filing and/or the filing of lead plaintiff motion on behalf of myself and Dawg Investment Fund, LLC.

2.  I am duly authorized to institute legal action on Dawg Investment Fund, LLC's behalf, including legal action against Daktronics, Inc., and other defendants.

3.  I and Dawg Investment Fund, LLC did not purchase the Daktronics, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

4.  I and Dawg Investment Fund, LLC are willing to serve as a representative party on behalf of a class, and I am willing to provide testimony at deposition and trial, if necessary.

5.  I and Dawg Investment Fund, LLC's transactions in Daktronics, Inc. securities during the period set forth in the Complaint are as follows:

    (See attached transactions)

6.  I and Dawg Investment Fund, LLC has not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years.

7.  I and Dawg Investment Fund, LLC will not accept any payment for serving as a representative party, except to receive our pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

12/15/2022
_____
Date

*Steve Settles*
_____
Steve Settles
Manager of Dawg Investment Fund, LLC

**Steve Settles' Transactions in Daktronics, Inc. (DAKT)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 4/4/2022 | Bought | 10,000 | $3.8800 |
| 4/29/2022 | Bought | 1,065 | $3.3550 |
| 4/29/2022 | Bought | 8,935 | $3.3600 |
| 8/3/2022 | Bought | 1,100 | $3.8050 |
| 8/3/2022 | Bought | 8,800 | $3.8100 |
| 8/3/2022 | Bought | 100 | $3.8000 |
| 8/31/2022 | Bought | 300 | $3.6499 |
| 8/31/2022 | Bought | 4,700 | $3.6500 |
| 8/31/2022 | Bought | 200 | $3.2290 |
| 8/31/2022 | Bought | 599 | $3.2390 |
| 8/31/2022 | Bought | 2,968 | $3.2399 |
| 8/31/2022 | Bought | 277 | $3.2300 |
| 8/31/2022 | Bought | 500 | $3.2150 |
| 8/31/2022 | Bought | 1,154 | $3.2299 |
| 8/31/2022 | Bought | 3,633 | $3.2200 |
| 8/31/2022 | Bought | 569 | $3.2100 |
| 8/31/2022 | Bought | 100 | $3.2250 |
| 9/29/2022 | Bought | 10,000 | $2.7000 |
| 9/29/2022 | Bought | 10,000 | $2.6900 |
| 10/21/2022 | Bought | 5,000 | $3.0500 |

**Dawg Investment Fund, LLC's Transactions in Daktronics, Inc. (DAKT)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 8/3/2022 | Bought | 3,000 | $3.8000 |
| 8/31/2022 | Bought | 3,000 | $3.6400 |